IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

In Re:

**JORGE G. QUILES MALDONADO
(XXX-XX-9150)**

**Debtor(s)**

Case No.:    **19-03782 ESL**

Chapter 13

**RESPONSE TO DEBTOR'S "OBJECTION TO AMENDED PROOF OF CLAIM NO.1-4 AND OPPOSITION TO CREDITOR'S MOTION FOR RECONSIDERATION" (DKT.#69)**

**TO THE HONORABLE COURT**:

**COMES NOW CREDITOR**, Damaris Santiago Méndez, by and through the undersigned attorney, and very respectfully requests and prays:

1. Debtor filed the present voluntary petition on June 29th, 2019.

2. The herein appearing creditor was included in Schedules E/F regarding a Domestic Support Obligation debt owed by debtor.

3. In the present case, creditor appeared on her behalf and filed proof of claim ("POC") number 1, classified as Priority. Said POC was amended by creditor, first on July 30th, 2019 (POC #1-2) and finally on August 31st, 2019 (POC #1-3). The amounts claimed by creditor totaled $33,908.92 and included pre-petition child support arrears, interests and other expenses.

4. On October 17th, 2019 (Doc.58) debtor filed an Objection to proof of claim No.1-3. The same was granted by this Honorable Court on November 26th, 2019. As a result, POC #1-3 was disallowed in its entirety. *See* Doc.#62.

5. On December 13th, 2019 the undersigned attorney filed a Notice for Appearance with this Honorable Court, informing that creditor will now be represented by our office. *See* Doc.#66. Also, on that same day, a motion was filed requesting this Honorable Court to reconsider and/or alter or amend the Order entered on docket #62, specifically with respect to the disallowance of Proof of Claim No.1-3. *See* Doc.#67.

6. In addition, an amended POC #1-4 was also filed on December 13th, 2019. The same amended the amounts owed by debtor to creditor as follows:

    a. The pre-petition Child Support arrears were eliminated since said amount was already included in a separate proof of claim filed by Administración Sustento de Menores ("ASUME")

    b. The expenses listed as "Medical Expenses" were eliminated because they were paid by debtor.

    c. The amount of $8,631.19 claimed as interest over child support arrears were adjusted to $9,460.22. In fact, the total amount claimed in the amended POC #1-4 is precisely the $9,460.22 regarding the child support interests.

7. On December 23rd, 2019, debtor filed a Motion Objecting the allowance of the Amended POC #1-4 and also Opposing creditor's request for reconsideration filed on Doc.#67. *See* Doc. #69. Debtor's motion makes several unwarranted and baseless averments implying that creditor is attempting to mislead this Honorable Court, going further by falsely asserting that creditor is lying to this Court of justice with the sole intention of inducing an incorrect decision. Adding insult to injury, debtor also attempts to raise doubts regarding creditor's reasons for deciding to retain our services after the order granting debtor's objection was granted.

8. The reality is that creditor's knowledge of bankruptcy (or lack of it), or the suggestion that she may or may have not received legal counseling, should not be a reason to deny creditor of her right for a due process and request a remedy to this Honorable Court. It is our respectful position that Debtor's arguments regarding this particular matter constitute a bad faith attempt to deprive creditor of her right to represent herself before this Honorable Court and defend the best interests of her minor aged dependent.

9. With respect to debtor's argument of creditor's alleged attempt to mislead this Honorable Court by providing false allegations, we profoundly disagree with debtor's allegations. Paragraph No.4 of debtor's objection filed on docket #58 clearly states: "As to the $8,631.19 in interest, *the state court decided to award interest over the principal DSO debt,* **and the debtor does not dispute that fact**. However, the state court has not decided the amount of that interest and Ms. Santiago has submitted no evidence to support the amount claimed". (Emphasis added) *See* ¶ **4,**

**Doc.58**

10. A plain reading of the above cited statement is a clear *judicial admission* that debtor in fact owes creditor, not only the child support pre-petition arrears but also the **interests accumulated over said debt**. The fact that debtor is in disagreement with the amount claimed by creditor does not deprive creditor from her right to claim the amounts she estimates that debtor owes her minor aged child for unpaid interests.

11. Furthermore, and contrary to debtor's allegations that creditor did not provided the State Court with her calculation of the amount of interests owed, the fact is that creditor did so through a **Joint Motion with the debtor**. Attached for this Honorable Court's reference is copy of the Joint Motion filed on December 9th, 2019. On page No.9, paragraph 48 of said Joint Motion creditor informed the State Court that the interest amount owed totaled $9,460.00. Moreover, on page No.9, paragraph 50, debtor informed the Court that the interest amount *he accepts to owe creditor is $7,651.63*. *See* ¶ **48 & 50, Joint Motion.**

12. It is striking that the same party that is appearing before this court and alleging bad faith is the party that omits the details and admissions contained in the **Joint Motion** that was signed and filed in the State Court just one month ago.

13. If debtor is not only accepting the State Court's ruling that creditor is entitled to interests over the unpaid child support arrears, but has also provided an amount he understands should be allowed as interests, then why is he seeking for the full disallowance of the claim amount instead of requesting this Honorable Court to allow claim No.1-4 for $7,651.63 instead? Only he knows the answer. Yet it is clear that this strategy represents what we believe is a bad faith attempt to use this Honorable Court as a means to deprive his child of the interest benefits that creditor was already awarded by State Court.

14. Paragraph No.11 of debtor's objection filed on docket No.69 simply ratifies what creditor has alleged to this Honorable Court in her request for reconsideration. That is, that creditor is in fact entitled to receive interests over the child support debt owed by debtor. Notwithstanding the fact that debtor is in disagreement with the amount claimed by creditor, this does not deprive

creditor to claim and receive this compensation. *See* ¶**11, Doc.69.**

15. A swift reading od debtor's opposition clearly demonstrates that he is under the incorrect impression that the fact that there may be a small portion of the claim amount that is subject to State Court determination, the entire claim should be disallowed. This interpretation ins plainly incorrect.

16. According to 11 U.S.C §101 (5)(A), a claim is defined as:

> *"right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.."*

17. It is well estaglshed that a claim arises regardless of enforcement efforts (i.e., future litigation) or of whether the claim is contingent, unliquidated, or unmatured when the petition is filed. See In re Stewart Foods, Inc., 64 F.3d 141, 146 (4th Cir. 1995) ("[T]hat the payments became due after the bankruptcy filing does not alter the conclusion that the payments are pre-petition obligations.") (citing Chiasson v. J. Louis Matherne & Assocs. (In re Oxford Mgmt., Inc., 4 F.3d 1329, 1335 n.7 (5th Cir. 1993) ("A claim is not rendered a post-petition claim simply by the fact that time for payment is triggered by an event that happens after the filing of the petition."); United States v. Gerth, 991 F.2d 1428, 1433 (8th Cir. 1993) ([D]ependency on a postpetition event does not prevent a debt from arising prepetition."); Braniff Airways v. Exxon, 814 F.2d 1030, 1336 (5th Cir. 1987) ("The character of a claim is not transformed from pre-petition to postpetition simply because it is contingent, unliquidated, or unmatured when the debtor's petition is filed.")); Matter of DG Acquisition Corp., 188 B.R. 918, 922 (Bankr. D. Del. 1995) ("When parties agree in advance that one party will indemnify the other in the event of a certain occurrence, there exists a "right to payment", albeit contingent, upon the signing of the agreement."); In re Express Freight Lines, 130 B.R. 288 (Bankr. E.D. Wis. 1991) (unmatured debts); In re Fred Sanders, 33 B.R. 310 (Bankr. E.D. Mich. 1983) (unliquidated debts); In re Wilson, 29 B.R. 54 (Bankr. W.D. Ark.1982) (inchoate tax refunds); 4 Collier on Bankruptcy ¶ 553.01; see also In re Remington Rand Corp., 836 F.2d 825 (3d

Cir. 1988).

18. Simply stated, it is undisputed that creditor has a right to payment over the interest accumulated form the pre-petition child support debt. A discrepancy or pending State Court adjudication over the precise amounts owed and to be allowed by this Honorable Court does deprive creditor from her right to receive the payment determined by the Court.

19. Due to the aforementioned, creditor respectfully request that this Honorable Court deny debtor's Objection to Proof of Claim No.1-4 and Opposition to creditor's motion for reconsideration filed on Doc.#69, allowing the claim as filed or setting hearing for the adjudication of the exact amount to be paid towards the same.

**WHEREFORE,** creditor respectfully requests this Honorable Court to enter an order denying debtor's Objection to Proof of Claim No.1-4 and Opposition to creditor's motion for reconsideration filed on Doc.#69, allowing the claim as filed or setting hearing for the adjudication of the exact amount to be paid towards the same.

**NOTICE OF OPPORTUNITY TO OBJECT**: Within fourteen (14) days after service as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if you were served by mail, any party against whom this paper has been served, or any other party to the action who objects to the relief sought herein, shall serve and file an objection or other appropriate response to this paper with the Clerk's office of the U.S. Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed herein, the paper will be deemed unopposed and may be granted unless: (i) the requested relief is forbidden by law; (ii) the requested relief is against public policy; or (iii) in the opinion of the Court, the interest of justice requires otherwise.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this same date, I electronically filed the above document with the Clerk of the Court using the CM/ECF System which will send a notification, upon information and belief, of such filing to the following: The Chapter 13 Trustee, The United States Trustee and to all the CM/ECF participants of this case.

**RESPECTFULLY SUBMITTED**

In San Juan, Puerto Rico this **22th** day of **JANUARY**, 2020.

**IGNACIO GARCIA FRANCO**
**USDC 231410**
Attorney for creditor
PO Box 361844
San Juan, P.R. 00936
Tel (787) 478-3379 / FAX (1-888) 860-9135
Email: ignaciolaw@gmail.com

***/s/ Ignacio García Franco, Esq.***

ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
SALA SUPERIOR DE ARECIBO

| **DAMARIS SANTIAGO MÉNDEZ** **JORGE G. QUILES MALDONADO** PETICIONARIOS vs. EX – PARTE | **CIVIL NÚM.:** C DI2018-0428 **PROCEDENCIA BAYAMÓN:** D DI2011-0314 **SALA:** 101 **SOBRE:** DIVORCIO (CM) |
|---|---|

**MOCIÓN CONJUNTA EN CUANTO A ASUNTOS PENDIENTES
SOBRE PENSIÓN ALIMENTARIA
Y EN CUMPLIMIENTO DE ORDEN DE 27 DE SEPTIEMBRE DE 2019**

**AL HONORABLE TRIBUNAL:**

COMPARECEN la Peticionaria de epígrafe representada por la Lcda. Myrna I. Vázquez González y el Peticionario representado por la Lcda. Verónica Acevedo Ayala, quienes muy respetuosamente EXPONEN, ALEGAN y SOLICITAN:

1. El 27 de septiembre de 2019, archivada y notificada el 1 de octubre de 2019, el Tribunal emitió **ORDEN** mediante la que dispuso que en un término de cinco (5) días las representantes legales en este caso deberían coordinar fecha de reunión e informar por escrito al Tribunal. Dicha Orden también estableció: "Se concede un plazo final de treinta (30) días a partir de la fecha de reunión para presentar escrito conjunto, so pena de sanciones".

2. Dicha reunión entre abogadas fue ordenada en corte abierta por el Tribunal durante vista celebrada el 6 de agosto de 2019 en torno a los siguientes asuntos, a saber:

    ➢ Cantidad por concepto de intereses legales ya adjudicados en favor de la Peticionaria mediante **ORDEN** de 14 de noviembre de 2017.

    ➢ Controversia sobre gastos educativos adicionales o mayores adeudados.

    ➢ Controversia sobre honorarios de abogado por vistas para mostrar causa y sus continuaciones celebradas el 20 de octubre de 2016, 25 de enero de 2017, 29 de junio de 2017 y 26 de marzo de 2018.

3. Mediante **MOCIÓN EN CUMPLIMIENTO DE ORDEN DE 27 DE SEPTIEMBRE DE 2019** presentada por la Peticionaria el 2 de octubre de 2019, la Peticionaria informó que la reunión entre abogadas se llevó a cabo el viernes, 4 de octubre de 2019, a la 1:30 de la tarde, en las instalaciones del propio Tribunal.

4. Con posterioridad, el 6 de noviembre de 2019 la Peticionaria presentó **MOCIÓN INFORMATIVA URGENTE** para exponer su posición sobre por qué no se había presentado el escrito conjunto ordenado el 27 de septiembre de 2019.

5. Las partes proceden a presentar el escrito conjunto ordenado, detallado de acuerdo con los asuntos pendientes sobre la pensión alimentaria.

**I-  ACCIÓN DE DESACATO - GASTOS EDUCATIVOS ADEUDADOS**

1. Las partes en este caso presentaron una **PETICIÓN** de divorcio el 18 de febrero de 2011, la cual forma parte de la **SENTENCIA** de divorcio en este caso de 28 de marzo de 2011 y que constituyó el estado de derecho en cuanto a la pensión alimentaria hasta que la pensión fue modificada con efectividad al 19 de diciembre de 2016. La pensión alimentaria estaba constituida de la siguiente manera, a saber:



> **IV. PENSION ALIMENTARIA**
>
> 1. El peticionario remitirá a la madre peticionaria, por concepto de pensión alimenticia, al amparo de la Ley de Sustento de Menores y las guías mandatarias para cubrir las necesidades de su hija menor la cantidad de MIL QUINIENTOS DOLARES MENSUALES ($1,500.00) que los depositará en la cuenta de ahorro con número 4001129622 del Banco Santander durante los primeros cinco días de cada mes comenzando el 1 de febrero de 2011. Además, el peticionario pagará $170.00 mensuales por concepto de la mensualidad del colegio de la menor mientras dure el período escolar. El peticionario también asumirá el pago de un plan médico para su hija menor de edad, el cual contendrá cubierta de farmacias y dental. Dicho pago se entregará a la madre de la menor a partir del 1 de febrero de 2011. Los deducibles médicos serán pagados por el progenitor que tenga la custodia física de la menor en el momento en que la misma requiera atención médica. Los gastos médicos extraordinarios que correspondan a la menor serán pagados por ambos peticionarios en partes iguales.
>
> 2. De surgir cambios en la educación de la menor que representen un gasto adicional o mayor como matrículas o libros, ambos peticionarios aportarán al pago de dichos gastos en partes iguales. Estas cantidades serán adicional a la cantidad de pensión alimentaria antes estipulada.



Cláusula en controversia.

2. El 30 de marzo de 2016 la Peticionaria comenzó una acción de desacato en la que alegó una deuda cuantiosa por concepto de pensión alimentaria por parte del Peticionario.

3. El 20 de octubre de 2016 la Peticionaria ofreció al Tribunal el detalle de la deuda que reclamaba mediante **RÉPLICA EN APOYO A SOLICITUD DE DESACATO**. En dicho escrito la Peticionaria detalló que la menor enfrentó un cambio de escuela con el consentimiento del Peticionario y que parte de la deuda se relacionaba con los gastos educativos de la menor.

4. El Peticionario se opuso a la aplicación de la cláusula número 2 antes citada de la Petición de divorcio. Ante la controversia surgida entre las partes en cuanto a la interpretación de esta cláusula, el 5 de junio de 2017 la Peticionaria radicó **MOCIÓN PARA REITERAR ESTADO DE DERECHO ANTE CAMBIOS EN LA EDUCACION DE LA MENOR**.

5. A raíz de la acción de la Peticionaria, el Tribunal emitió **ORDEN** el 7 de junio de 2017, notificada el 8 de junio de 2017. El Tribunal dispuso:

> Ha Lugar. Así interpreta el Tribunal el estado de derecho en el caso en torno a la cláusula en la Petición y Estipulación "de haber cambios en la educación de la menor que representen un gasto adicional o mayor."

6. Tras varios trámites procesales, el 29 de junio de 2017 se celebró vista de desacato en la que la partida de los gastos educativos reclamados por la Peticionaria quedó en controversia y sería motivo de la celebración de una vista evidenciaria, la cual nunca llegó a celebrarse por diversos factores, incluyendo el traslado del caso a la región judicial de Arecibo.[1]

7. En dicha audiencia de 29 de junio de 2017, presidida por la misma Juez que presidió la vista de divorcio y dictó la Sentencia objeto de interpretación, surgió la discusión de los gastos educativos en controversia. Aunque sin hacer una determinación oficial, al escuchar las argumentaciones de las abogadas la Juez expresó que la lista que ofrece la cláusula número 2 en cuestión es una ejemplificativa. Incluso, la abogada del Peticionario argumentó que podía incluir otros gastos educativos (refiriéndose a que no solo libros y matrícula), pero no el aumento en la mensualidad que reclama la Peticionaria.

---

[1] Véase **MINUTA** de 29 de junio de 2017, transcrita el 5 de julio de 2017.

8. Ante el hecho de que el Peticionario no estaba dispuesto ni siquiera a estipular que se había incurrido en los gastos ni las cantidades, se señaló vista evidenciaria.

9. El detalle de la deuda por gastos educativos fue presentado por la Peticionaria el 19 de octubre de 2017 mediante **MOCIÓN PARA DETALLAR DEUDA PENDIENTE DE PENSIÓN ALIMENTARIA EN CUANTO A GASTOS EDUCATIVOS ADICIONALES O MAYORES ANTE CAMBIOS EN LA EDUCACIÓN DE LA MENOR, PARA RECLAMAR INTERESES LEGALES SOBRE ESTA CANTIDAD Y PARA SOLICITAR ABOGADOS POR EL PROCEDIMIENTO PARA RECLAMAR DEUDA DE PENSIÓN ALIMENTARIA**. Los gastos reclamados fueron:

**Pagos de escuela extendida - Gasto adicional a la pensión.**

| Mes y año | Gasto adicional | 50% Padre |
|---|---|---|
| Aug-11 | $100.00 | $50.00 |
| Sep-11 | $100.00 | $50.00 |
| Oct-11 | $100.00 | $50.00 |
| Nov-11 | $100.00 | $50.00 |
| Dec-11 | $100.00 | $50.00 |
| Jan-12 | $100.00 | $50.00 |
| Feb-12 | $100.00 | $50.00 |
| Mar-12 | $100.00 | $50.00 |
| Apr-12 | $100.00 | $50.00 |
| May-12 | $100.00 | $50.00 |
| Jun-12 | | |
| Jul-12 | | |
| Aug-12 | $100.00 | $50.00 |
| Sep-12 | $100.00 | $50.00 |
| Oct-12 | $100.00 | $50.00 |
| Nov-12 | $100.00 | $50.00 |
| Dec-12 | $100.00 | $50.00 |
| Jan-13 | $100.00 | $50.00 |
| Feb-13 | $100.00 | $50.00 |
| Mar-13 | $100.00 | $50.00 |
| Apr-13 | $100.00 | $50.00 |
| May-13 | $100.00 | $50.00 |
| Jun-13 | | |
| Jul-13 | | |
| Aug-13 | $100.00 | $50.00 |
| Sep-13 | $100.00 | $50.00 |
| Oct-13 | $100.00 | $50.00 |
| Nov-13 | $100.00 | $50.00 |
| Dec-13 | $100.00 | $50.00 |
| Jan-14 | $100.00 | $50.00 |
| Feb-14 | $100.00 | $50.00 |
| Mar-14 | $100.00 | $50.00 |
| Apr-14 | $100.00 | $50.00 |
| May-14 | $100.00 | $50.00 |
| Jun-14 | | |
| Jul-14 | | |
| Aug-14 | $100.00 | $50.00 |
| Sep-14 | $100.00 | $50.00 |
| Oct-14 | $100.00 | $50.00 |
| Nov-14 | $100.00 | $50.00 |
| Dec-14 | $100.00 | $50.00 |
| Jan-15 | $100.00 | $50.00 |
| Feb-15 | $100.00 | $50.00 |
| Mar-15 | $100.00 | $50.00 |
| Apr-15 | $100.00 | $50.00 |
| May-15 | $100.00 | $50.00 |
| Jun-15 | | |
| Jul-15 | | |
| Aug-15 | $100.00 | $50.00 |
| Sep-15 | $100.00 | $50.00 |
| Oct-15 | $100.00 | $50.00 |
| Nov-15 | $100.00 | $50.00 |
| Dec-15 | $100.00 | $50.00 |
| Jan-16 | $100.00 | $50.00 |
| Feb-16 | $100.00 | $50.00 |
| Mar-16 | $100.00 | $50.00 |
| Apr-16 | $100.00 | $50.00 |
| May-16 | $100.00 | $50.00 |
| Jun-16 | | |
| Jul-16 | | |
| Aug-16 | $100.00 | $50.00 |
| Sep-16 | $100.00 | $50.00 |
| Oct-16 | $100.00 | $50.00 |
| Nov-16 | $100.00 | $50.00 |
| **Totales** | **$5,400.00** | **$2,700.00** |

**Pagos de mensualidades**

| Mes y año | Mensualidad Academia Cristiana de Lares | Mensualidad Capitán Correa | Gasto mayor | 50% Padre |
|---|---|---|---|---|
| Aug-11 | $170.00 | $270.00 | $100.00 | $50.00 |
| Sep-11 | $170.00 | $270.00 | $100.00 | $50.00 |
| Oct-11 | $170.00 | $270.00 | $100.00 | $50.00 |
| Nov-11 | $170.00 | $270.00 | $100.00 | $50.00 |
| Dec-11 | $170.00 | $270.00 | $100.00 | $50.00 |
| Jan-12 | $170.00 | $270.00 | $100.00 | $50.00 |
| Feb-12 | $170.00 | $270.00 | $100.00 | $50.00 |
| Mar-12 | $170.00 | $270.00 | $100.00 | $50.00 |
| Apr-12 | $170.00 | $270.00 | $100.00 | $50.00 |
| May-12 | $170.00 | $270.00 | $100.00 | $50.00 |
| Jun-12 | | | $ - | |
| Jul-12 | | | $ - | |
| Aug-12 | $170.00 | $270.00 | $100.00 | $50.00 |
| Sep-12 | $170.00 | $270.00 | $100.00 | $50.00 |
| Oct-12 | $170.00 | $270.00 | $100.00 | $50.00 |
| Nov-12 | $170.00 | $270.00 | $100.00 | $50.00 |
| Dec-12 | $170.00 | $270.00 | $100.00 | $50.00 |
| Jan-13 | $170.00 | $270.00 | $100.00 | $50.00 |
| Feb-13 | $170.00 | $270.00 | $100.00 | $50.00 |
| Mar-13 | $170.00 | $270.00 | $100.00 | $50.00 |
| Apr-13 | $170.00 | $270.00 | $100.00 | $50.00 |
| May-13 | $170.00 | $270.00 | $100.00 | $50.00 |
| Jun-13 | | | $ - | |
| Jul-13 | | | $ - | |
| Aug-13 | $170.00 | $270.00 | $100.00 | $50.00 |
| Sep-13 | $170.00 | $270.00 | $100.00 | $50.00 |
| Oct-13 | $170.00 | $270.00 | $100.00 | $50.00 |
| Nov-13 | $170.00 | $270.00 | $100.00 | $50.00 |
| Dec-13 | $170.00 | $270.00 | $100.00 | $50.00 |
| Jan-14 | $170.00 | $270.00 | $100.00 | $50.00 |
| Feb-14 | $170.00 | $270.00 | $100.00 | $50.00 |
| Mar-14 | $170.00 | $270.00 | $100.00 | $50.00 |
| Apr-14 | $170.00 | $270.00 | $100.00 | $50.00 |
| May-14 | $170.00 | $270.00 | $100.00 | $50.00 |
| Jun-14 | | | $ - | |
| Jul-14 | | | $ - | |
| Aug-14 | $170.00 | $270.00 | $100.00 | $50.00 |
| Sep-14 | $170.00 | $270.00 | $100.00 | $50.00 |
| Oct-14 | $170.00 | $270.00 | $100.00 | $50.00 |
| Nov-14 | $170.00 | $270.00 | $100.00 | $50.00 |
| Dec-14 | $170.00 | $270.00 | $100.00 | $50.00 |
| Jan-15 | $170.00 | $270.00 | $100.00 | $50.00 |
| Feb-15 | $170.00 | $270.00 | $100.00 | $50.00 |
| Mar-15 | $170.00 | $270.00 | $100.00 | $50.00 |
| Apr-15 | $170.00 | $270.00 | $100.00 | $50.00 |
| May-15 | $170.00 | $270.00 | $100.00 | $50.00 |
| Jun-15 | | | $ - | |
| Jul-15 | | | $ - | |
| Aug-15 | $170.00 | $270.00 | $100.00 | $50.00 |
| Sep-15 | $170.00 | $270.00 | $100.00 | $50.00 |
| Oct-15 | $170.00 | $270.00 | $100.00 | $50.00 |
| Nov-15 | $170.00 | $270.00 | $100.00 | $50.00 |
| Dec-15 | $170.00 | $270.00 | $100.00 | $50.00 |
| Jan-16 | $170.00 | $270.00 | $100.00 | $50.00 |
| Feb-16 | $170.00 | $270.00 | $100.00 | $50.00 |
| Mar-16 | $170.00 | $270.00 | $100.00 | $50.00 |
| Apr-16 | $170.00 | $270.00 | $100.00 | $50.00 |
| May-16 | $170.00 | $270.00 | | |
| Jun-16 | | | | |
| Jul-16 | | | | |
| Aug-16 | $170.00 | $270.00 | $100.00 | $50.00 |
| Sep-16 | $170.00 | $270.00 | $100.00 | $50.00 |
| Oct-16 | $170.00 | $270.00 | $100.00 | $50.00 |
| Nov-16 | $170.00 | $270.00 | $100.00 | $50.00 |
| **Totales** | **$9,180.00** | **$14,580.00** | **$5,400.00** | **$2,700.00** |

| Pagos de matrícula | | |
|---|---|---|
| Año escolar | Grado | Cantidad pagada |
| 2011/12 | Primero | $ 1,118.00 |
| 2012/13 | Segundo | $ 1,118.00 |
| 2013/14 | Tercero | $ 1,138.00 |
| 2014/15 | Cuarto | $ 1,156.00 |
| 2015/16 | Quinto | $ 1,156.00 |
| 2016/17 | Sexto | $ 1,156.00 |
| | Total pagado | $ 6,842.00 |
| | Participación padre (50%) | $ 3,421.00 |

| Pago de libros - Gasto adicional a la pensión. | |
|---|---|
| Gastos libros 2015/16 (Quinto grado) | |
| Comercio | Cantidad |
| Librería Educativa | $ 38.20 |
| Colegio Evangélico Capitán Correa | $ 257.55 |
| Colegio Evangélico Capitán Correa | $ 52.50 |
| Total | $ 348.25 |
| Participación de papá (50%) | $ 174.13 |
| Gastos libros 2016/17 (Sexto grado) | |
| Comercio | Cantidad |
| TEXTBOOKRUSH | $ 44.22 |
| Librería Educativa | $ 54.64 |
| Librería Educativa | $ 24.86 |
| Colegio Evangélico Capitán Correa | $ 56.00 |
| Colegio Evangélico Capitán Correa | $ 17.10 |
| Colegio Evangélico Capitán Correa | $ 166.90 |
| Total | $ 363.72 |
| Participación de papá (50%) | $ 181.86 |
| Total participación del padre | $ 355.99 |

### ACUERDOS ALCANZADOS SOBRE GASTOS EDUCATIVOS

10. Las partes estipulan de manera general que al momento del divorcio de las partes la menor cursaba estudios en la Academia Cristiana de Lares, donde estudió solo un semestre y no utilizaba libros por el sistema del Colegio. El costo del semestre que la menor completó en dicha institución fue de $320.

11. Las partes también estipulan que la mensualidad en la Academia Cristiana de Lares era $170.

12. Las partes estipulan que en agosto de 2011, con el consentimiento de ambos Peticionarios, la menor fue cambiada al Colegio Evangélico Capitán Correa en Hatillo, donde aumentaron los gastos de matrícula, la mensualidad aumentó a $270 y se incurrió en otros gastos educativos (escuela extendida y libros).

13. Las partes establecen, además, que las cantidades sobre las que no existe controversia en cuanto a cada una de las partidas de gastos educativos sobre las que hubo acuerdo son el cómputo exacto que resulta en derecho conforme a la posición de la Peticionaria a base de la cantidad adeudada y los pagos recibidos y no una cantidad estipulada. Por tanto, cada vez que las partes afirman que estipulan una cantidad lo que significa es que no hay controversia sobre ella.

### Matrícula

14. En cuanto a los gastos de matrícula, las partes establecen que no existe controversia y están contestes en cuanto a que se incurrió en los gastos de matrícula que reclama la Peticionaria ($6,842.00) en el Colegio Evangélico Capitán Correa y que la totalidad de esa cantidad fue pagada por la Peticionaria.

### Posición de la Peticionaria

15. La posición de la Peticionaria es que en la pensión alimentaria estipulada solo se incluyó la mensualidad ($170). En cuanto a cualquier gasto educativo adicional o mayor, a manera de ejemplo como matrícula o libros, cada una de las partes debe responder en un 50%, por lo que el Peticionario adeuda $3,421.00 por este concepto.

16. Si el Tribunal entendiera que el Peticionario solo responde por la mitad del incremento en el costo de matrícula por el cambio de un colegio a otro, la matrícula que se había pagado al momento del divorcio de las partes era $320 en Lares Christian Academy. Si este fuera el escenario avalado por el Tribunal, entonces cuando la menor cambió de escuela al Colegio Evangélico Capitán Correa el Peticionario debió pagar el 50% del exceso de $320 que era la matrícula pagada al momento de las partes estipular la pensión, por lo que la deuda sería de $2,461, como se detalla en la siguiente tabla:



*Damaris Santiago Méndez, Jorge Quiles Maldonado, Ex parte*     Página **5** de **12**
**C DI2018-0428**

---

| Pagos de matrícula - Gasto mayor a la pensión estipulada | | | | | |
|---|---|---|---|---|---|
| Año escolar | Grado | Cantidad pagada en la escuela nueva (Colegio Evangélico Capitán Correa en Hatillo) | Cantidad que pagaba en la escuela anterior (Lares Christian Academy en Lares) | Aumento en la matrícula | Participación del Peticionario (50%) |
| 2011/12 | Primero | $ 1,118.00 | $ (320.00) | $ 798.00 | $ 399.00 |
| 2012/13 | Segundo | $ 1,118.00 | $ (320.00) | $ 798.00 | $ 399.00 |
| 2013/14 | Tercero | $ 1,138.00 | $ (320.00) | $ 818.00 | $ 409.00 |
| 2014/15 | Cuarto | $ 1,156.00 | $ (320.00) | $ 836.00 | $ 418.00 |
| 2015/16 | Quinto | $ 1,156.00 | $ (320.00) | $ 836.00 | $ 418.00 |
| 2016/17 | Sexto | $ 1,156.00 | $ (320.00) | $ 836.00 | $ 418.00 |
| | Total pagado | $ 6,842.00 | $ (1,920.00) | $ 4,922.00 | $ 2,461.00 |

### Posición del Peticionario

17. Por su parte, el Peticionario alega que cuando se estipuló la pensión alimentaria en el proceso de divorcio, la menor estudiaba en Lares Christian Academy, donde se pagaba una matrícula de $640. Para la fecha en que se presentó la Petición de Divorcio con la estipulación sobre pensión alimentaria, la Sra. Damaris Santiago ya había incurrido en el gasto de matrícula y conocía la cantidad anual por dicho concepto. El Peticionario entiende que la cantidad de $640 anuales para matrícula estaba incluida en la cantidad estipulada de pensión alimentaria. A su juicio, cuando la menor cambió de escuela al Colegio Evangélico Capitán Correa, solo debió pagar el 50% del exceso de $640 que ya estaba incluido en la pensión. Por tanto, reconoce únicamente la cantidad de $1,501.00, que se detallan de la siguiente manera:

| Año escolar | Cantidad pagada en el Colegio Capitán Correa de Hatillo | Cantidad anual que el Peticionario alega que ya estaba incluida en la pensión en cuanto a Lares Christian Academy | Cantidad adicional a la estipulada |
|---|---|---|---|
| 2011/12 | $ 1,118.00 | $ (640.00) | $ 478.00 |
| 2012/13 | $ 1,118.00 | $ (640.00) | $ 478.00 |
| 2013/14 | $ 1,138.00 | $ (640.00) | $ 498.00 |
| 2014/15 | $ 1,156.00 | $ (640.00) | $ 516.00 |
| 2015/16 | $ 1,156.00 | $ (640.00) | $ 516.00 |
| 2016/17 | $ 1,156.00 | $ (640.00) | $ 516.00 |
| Totales | $ 6,842.00 | $ (3,840.00) | $ 3,002.00 |
| | | Participación del Peticionario (50%) | $ 1,501.00 |

18. Por tanto, la cantidad en controversia es $1,920.

19. La Peticionaria entiende que la posición del Peticionario es contraria a sus propios actos y encierran mala fe. Como la Peticionaria señaló en **MOCIÓN PARA DETALLAR DEUDA PENDIENTE DE PENSIÓN ALIMENTARIA EN CUANTO A GASTOS EDUCATIVOS ...** con fecha de 19 de octubre de 2017, el Peticionario pagó en varias ocasiones el 50% de la matrícula que se reclama y en el momento en que le fuera requerido por la Peticionaria para algunos años educativos. Llegada la vista de 29 de junio de 2017, se sumaron todas las partidas adeudadas sobre las que no había controversia. Entonces se sumaron de manera global todos los pagos que el Peticionario había realizado, incluyendo los pagos de matrícula que había hecho, y se restó la totalidad pagada a la deuda por las partidas que no había controversia. No obstante, la Peticionaria argumenta que el Peticionario había hecho varios pagos del 50% de la matrícula porque sabía que la matrícula no estaba contemplada en la pensión estipulada (que era un gasto educativo adicional a la pensión estipulada) y que respondía en un 50% del total.

20. No obstante, la Peticionaria destaca que algunos de los pagos depositados por el Peticionario a la cuenta de la Peticionaria corresponden exactamente a la mitad de algunas de las facturas de matrícula que emitiera el Colegio Evangélico Capitán Correa. Así sucedió en los años educativos 2013/14, 2014/15 y 2015/16. Fue para el año académico siguiente a que la madre instara acción de desacato que el padre dejó de pagar esta partida. Por tanto, una vez más, al alegar que no le corresponde pagar el 50% de la matrícula el Peticionario va en contra de sus propios actos.

### Libros

21. El Peticionario reconoce la cantidad de $355.99 por concepto de libros que reclama la Peticionaria según la cláusula número dos (2) de la Petición de divorcio sobre pensión alimentaria antes citada.

### Escuela extendida

22. Las partes acuerdan que no existe controversia en cuanto a que de agosto de 2011 a noviembre de 2016 la menor asistió a escuela extendida en el Colegio Evangélico Capitán Correa, lo que conllevó costos ascendentes a $5,400 ($100 mensuales). Las partes están de acuerdo en que este gasto la menor no lo tenía en Lares Christian Academy, donde estudiaba antes de ser cambiada al Capitán Correa. Por tanto, las partes establecen que del Tribunal determinar que este gasto está incluido en la cláusula 2 de la petición antes citada al considerarlo un gasto educativo adicional, el padre responde por $2,700.

### Posición del Peticionario

23. La controversia en cuanto a esta partida estriba en que el Peticionario alega que la cláusula 2 de la Petición citada y la cual establece la pensión alimentaria es una taxativa, por lo que incluye solo matrícula y libros. Se niega la alegación de la Peticionaria en cuanto a que el peticionario aprovecha el tracto tan accidentado que ha tenido este caso para inducir a error al Tribunal. El peticionario de ninguna manera ha representado cuestiones falsas a este Honorable Tribunal ni cosa que se le parezca. Simplemente, el peticionario no comparte la interpretación que hace la peticionaria respecto la cláusula 2 sobre pensión alimentaria que se estipuló en la Petición de Divorcio presentada por los peticionarios. Tener una posición contraria a la peticionaria de ninguna manera implica que se está induciendo a error al Tribunal. La propia peticionaria reconoce que la controversia en cuanto a los gastos educativos quedó pendiente, por lo que se señaló vista evidenciaria.

### Posición de la Peticionaria

24. Por su parte, la Peticionaria alega que la cláusula 2 antes citada contiene una lista ejemplificativa, por lo que el Peticionario responde por el 50% de cualquier gasto educativo adicional o mayor a la mensualidad (que era el único gasto educativo incluido en la pensión estipulada). Este Tribunal debe recordar que la posición de la Peticionaria fue avalada por el Tribunal mediante **ORDEN** el 7 de junio de 2017, notificada el 8 de junio de 2017. Esto, luego de que la Peticionaria presentara el 5 de junio de 2017 **MOCIÓN PARA REITERAR ESTADO DE DERECHO ANTE CAMBIOS EN LA EDUCACION DE LA MENOR.**

25. Incluso, en vista celebrada el 29 de junio de 2017, aunque sin ofrecer una determinación final, la Juez expresó que la cláusula número 2 en controversia contenía una lista ejemplificativa, ante lo que la entonces Abogada del Peticionario argumentó que, ciertamente, podría incluir otros gastos educativos, pero no la mensualidad.

26. La Peticionaria destaca que la controversia en cuanto a los gastos educativos quedó pendiente no porque se objetara el estado de derecho, sino porque el Peticionario ni siquiera estaba dispuesto a estipular los gastos para que entonces el Tribunal adjudicara.

27. Incluso, en la vista celebrada el 29 de junio de 2017 la Juez mencionó que había escuchado la regrabación de la vista de divorcio en dos ocasiones y que uno de los abogados argumentó que la cláusula número 2 de la Petición y sobre pensión alimentaria se incluyó para evitar tener que revisar la pensión si aumentaba algún gasto educativo o surgía algún gasto adicional.

28. A juicio de la Peticionaria, el Peticionario aprovecha el tracto tan accidentado que ha tenido este caso (que incluye tres cambios de juez y el traslado del caso a otra región judicial) para inducir a error al Tribunal.

### Campamento de verano

29. La Peticionaria acepta descartar cualquier reclamación que hubiese hecho de campamento de verano como parte de la controversia sobre gastos educativos.

**Mensualidad**

30. En cuanto a la deuda por concepto de mensualidad, las partes están de acuerdo en que no existe controversia en cuanto a que la mensualidad en la Academia Cristiana de Lares era de $170 y en el Colegio Evangélico Capitán Correa era de $270, por lo que de agosto de 2011 a noviembre de 2016 se pagó por concepto de mensualidades en el Colegio Evangélico Capitán Correa $14,580.00. También están de acuerdo en que no existe controversia en cuanto a la cantidad que se hubiese pagado si la mensualidad se hubiera mantenido en $170 era de $9,180. Por tanto, están de acuerdo en que la controversia es por la diferencia de $5,400 de agosto de 2011 a noviembre de 2016 (aumento en el costo de mensualidad por cambio de escuela reclamado por la Peticionaria).

      **Posición de la Peticionaria**

31. La Peticionaria acepta que el único gasto educativo incluido en la pensión estipulada era la mensualidad ($170). No obstante, a su juicio la cláusula 2 es clara en cuanto a que cualquier gasto educativo adicional o mayor al estipulado, el Peticionario responde en un 50%. Por tanto, si la menor estudiaba en Lares Christian Academy (donde la mensualidad era $170) y luego en Capitán Correa se pagaba $270 de mensualidad, había un gasto mayor al estipulado de $100 mensuales, por lo que el Peticionario responde por el 50% de ese aumento.

32. Incluso, el 5 de junio de 2017 la Peticionaria presentó **MOCIÓN PARA REITERAR ESTADO DE DERECHO ANTE CAMBIOS EN LA EDUCACIÓN DE LA MENOR**. En el párrafo siete de dicha Moción la Peticionaria estableció: "Para ofrecer un ejemplo más concreto, si el costo de la mensualidad de Lares Chriatian Academy era $170 y en el Colegio Evangélico Capitán Correa era $270, el padre debió pagar la mitad de la diferencia de los $100". Con relación a esta alegación de la Peticionaria el Tribunal emitió **ORDEN** el 7 de junio de 2017, notificada el 8 de junio de 2017, y dispuso:

> Ha Lugar. Así interpreta el Tribunal el estado de derecho en el caso en torno a la cláusula en la Petición y Estipulación "de haber cambios en la educación de la menor que representen un gasto adicional o mayor."

33. Por tanto, se trata de un asunto resuelto en cuanto a la interpretación del estado de derecho. La Peticionaria destaca, una vez más, que la controversia en cuanto a los gastos educativos quedó pendiente no porque se objetara el estado de derecho, sino porque el Peticionario ni siquiera estaba dispuesto a estipular los gastos para que entonces el Tribunal adjudicara.

      **Posición del Peticionario**

34. La controversia en cuanto a esta partida estriba en que el Peticionario alega que la cláusula 2 de la Petición citada y que establece la pensión alimentaria es una taxativa, por lo que incluye solo matrícula y libros. Ciertamente, el 7 de junio de 2017, el Tribunal emitió Orden en la cual dispuso:

> "Ha Lugar. Así interpreta el Tribunal el estado de derecho en el caso en torno a la cláusula en la Petición y Estipulación "de haber cambios en la educación de la menor que representen un gasto adicional o mayor.",

No obstante, el Tribunal no resolvió si la cláusula es ejemplificativa o taxativa al mencionar "matrículas o libros". El Tribunal solo dispuso que su interpretación sobre dicha cláusula era que de haber cambios en la educación de la menor que representen un gasto adicional o mayor, las partes pagarían un 50%.

35. Tan evidente es que dicho asunto no fue resuelto por el Tribunal, que en la vista del 29 de junio de 2017, luego del Tribunal haber emitido la Orden que quiere utilizar la peticionaria para decir que el asunto ya fue resuelto, las abogadas argumentaron sobre si la cláusula era ejemplificativa o taxativa, quedando el asunto pendiente de resolverse en una vista evidenciaria. La peticionaria, en el acápite 24 de esta moción reconoce que la juez no emitió una determinación final sobre su interpretación en cuanto a si la cláusula es ejemplificativa o taxativa. Basta con escuchar la regrabación de dicha vista para confirmar que el asunto en controversia sería dilucidado en una vista evidenciaria. De haber sido resuelto, como plantea la peticionaria, en la vista del 29 de junio de 2017, el

Tribunal hubiera hecho referencia a la Orden del 7 de junio de 2017 para afirmar que el asunto ya había sido resuelto y que únicamente restaba celebrar una vista evidenciaria sobre los gastos incurridos. Es evidente que el Tribunal no ha resuelto si la claúsula 2 es una ejemplificativa, en cuyo caso podría incluir otros gastos educativos, o es una taxativa, refiriéndose únicamente a gastos adicionales o mayores de matrícula o libros.

**Controversias a resolver por el Tribunal en cuanto a gastos educativos**

36. Continúan en controversia las partidas reclamadas por la Peticionaria en cuanto a la matrícula, aumento en la mensualidad escolar y escuela extendida. Por tanto, el Tribunal debe celebrar vista evidenciaria para resolver esta controversia (lo que incluye decidir si el Peticionario responde por estas cantidades de acuerdo con la Sentencia de divorcio de 2011, la determinación sobre desacato, la forma en que va a pagar dichas cantidades si es que responde por ellas y los intereses legales y honorarios de abogado aplicables y solicitados por la Peticionaria).

37. En cuanto a las partidas reconocidas por el Peticionario ($1,501 de matrícula y $355.99 de libros y que suman $1,856.99), el Tribunal decidirá sobre el plan de pago para satisfacer la deuda, la determinación de desacato y la adjudicación de intereses legales y honorarios de abogado por estas cantidades, según solicitado por la Peticionaria.

**II- INTERESES LEGALES SOBRE DEUDA YA ESTABLECIDA DE PENSIÓN ALIMENTARIA DE $25,917.23**

38. En cuanto a la deuda ya establecida por concepto de las partidas que no se encontraban en controversia en cuanto a deuda de pensión alimentaria y que ascendía a **$25,917.23**, deuda que surge de **MINUTA** de 29 de junio 2017, la Peticionaria solicitó los intereses legales correspondientes, solicitud declarada **HA LUGAR** mediante **ORDEN** de 14 de noviembre de 2017, notificada mediante correo electrónico el 17 de noviembre de 2017.

39. Mediante dicha Orden el Tribunal ordenó a la Peticionaria presentar el cálculo de dichos intereses, lo cual se realizó el 12 de diciembre de 2017 mediante **MOCIÓN PARA PRESENTAR CÁLCULO DE INTERESES LEGALES SOBRE DEUDA DE PENSIÓN ALIMENTARIA YA CONCILIADA EN VISTA CELEBRADA EL 29 DE JUNIO DE 2017**.

40. El 29 de noviembre de 2017 el Peticionario presentó una solicitud de reconsideración en cuanto a la imposición de intereses legales, la que finalmente fue declarada No Ha Lugar mediante **RESOLUCIÓN** de 5 de diciembre de 2017, archivada el 23 de septiembre de 2019. Dicha determinación no fue objeto de apelación, por lo que advino final y firme.

41. Sobre este particular, las partes estipulan que la deuda de pensión alimentaria en este caso y que sumaba $25,917.23 data de julio de 2011 (desde cuando deben comenzar a computarse los intereses legales) y que aún no ha sido satisfecha, quedando un balance de $25,007.48.

42. Como obra del récord, estando fijado un plan de pago para pagar esta deuda y con el cual debía cumplir el Peticionario, el 24 de marzo de 2018 el Peticionario presentó una petición de quiebra bajo el Capítulo 13 (caso 18-01599). Dicha petición fue desestimada mediante Orden de la Corte de Quiebras de 20 de mayo de 2019.

43. Se procede a documentar la posición de ambas partes para que el Tribunal resuelva la controversia.

**Posición de la Peticionaria**

44. La Peticionaria plantea que los intereses legales se acumulan desde que el Peticionario debió satisfacer cada pago de la pensión alimentaria (julio de 2011 según estipulado) hasta el saldo de la deuda en su totalidad, incluyendo el período en que el peticionario estuvo ventilando su petición de quiebra, la cual fue finalmente desestimada antes de que se hubiese aprobado el plan de pago propuesto por el Peticionario ante el Síndico de Quiebra debido a deuda de pensión corriente.

45. Y es que como ha expresado el Tribunal de Apelaciones en *Ofna. del Comisionado de Instituciones Financieras v. Pérez Madera*, 2005TCA3935, "al producirse la desestimación de la solicitud de quiebra todo retorna a su estado previo a la paralización, como si tal petición no se hubiera presentado".

46. Esta postura ha sido reafirmada por el Tribunal de Apelaciones en varias ocasiones. En el caso *Pan American Grain Manufacturing Company, Inc. v. Morales Albino*, 98TCA1672, los dueños de una vaquería (esposos) le adeudaban sobre $145 mil a sus suplidores, más intereses. Los deudores sometieron una solicitud de reorganización ante el Tribunal de Quiebras para el Distrito de Puerto Rico. Luego de aprobarse el plan de reorganización, el Tribunal de Quiebras desestimó el caso. Los acreedores acudieron al foro local para cobrar su deuda. El TPI le había concedido los intereses reclamados por el acreedor en una acción que llevó sobre cobro de dinero. Los deudores "negaron adeudar los [...] intereses devengados". El acreedor expresó ante el TCA que "la desestimación tiene el efecto de retornar la situación del deudor a aquella que existía antes de que cometiera el caso de quiebras por lo cual tenía derecho a [...] su acción en cobro de dinero por la totalidad adeudada, más intereses". El TCA le dio la razón al acreedor y expresó que "la desestimación del caso de quiebra surte el efecto de reestablecer el derecho de los acreedores al estado en que se encontraban antes de radicar el quebrado la petición de quiebra". El Tribunal de Apelaciones razonó que "al desestimarse el caso de quiebras, Pan American (el acreedor) advino a los mismos derechos que tenía con anterioridad a que los apelantes (deudores) radicaran su quiebra, entre ellos, [...] recobrar la totalidad de las sumas que se le adeudaban".

47. En este sentido, la Peticionaria plantea que los intereses se siguen acumulando hasta que el Peticionario satisfaga la deuda en su totalidad, por lo que incluso con posterioridad a la adjudicación de los intereses que se detallan en la presente Moción (y que se calculan hasta diciembre de 2019) tendría que computarse los intereses acumulados desde enero de 2020 hasta que el Peticionario satisfaga la deuda en su totalidad.

48. Las partes están contestes en que si el Tribunal acogiese la posición de la Peticionaria los intereses acumulados desde julio de 2011 hasta diciembre de 2019 suman **$9,460.22**. Se destaca que solo se estipula el cálculo de ese periodo y que quedaría resolver si los intereses se siguen acumulando hasta el saldo de la deuda en su totalidad, como plantea la Peticionaria. Las partes establecen, además, que esta cantidad es el cómputo exacto que resulta en derecho conforme a la posición de la Peticionaria a base de la cantidad adeudada y los pagos recibidos y no una cantidad estipulada.

### Posición del Peticionario

49. Por su parte, el Peticionario alega que no procede calcular intereses legales mientras estuvo bajo la protección de la Corte de Quiebras, entiéndase desde el 24 de marzo de 2018 al 20 de mayo de 2019. A su juicio, durante dicho periodo el peticionario no emitió ningún pago del plan de pago establecido por el Tribunal por haberse acogido a la Ley de Quiebras. Presentada la petición, la Corte de Quiebras emitió una orden de paralización. Existiendo una prohibición de cualquier gestión de cobro sobre la deuda de pensión alimentaria sometida en la petición de quiebra, no procede la imposición de intereses legales sobre dicha cantidad durante el periodo en que la misma estuvo bajo la jurisdicción de la Corte de Quiebras. Durante dicho periodo, el Peticionario no estaba obligado a emitir pago alguno, toda vez que es el Síndico asignado por la Corte de Quiebras quien tiene la obligación de emitir pagos a los acreedores.

50. Bajo esta postura, las partes están contestes en que si el Tribunal acogiese la posición del Peticionario los intereses acumulados desde julio de 2011 hasta diciembre de 2019, excluyendo el periodo en que el Peticionario ventilo su petición de quiebra (24 de marzo de 2018 a 20 de mayo de 2019) suman **$7,651.63**. Se destaca que solo se estipula el cálculo de ese periodo y que quedaría resolver si los intereses se siguen acumulando hasta el saldo de la deuda en su totalidad, como plantea la Peticionaria. Las partes establecen, además, que esta cantidad es el cómputo exacto que resulta en derecho conforme a la posición del Peticionario a base de la cantidad adeudada y los pagos recibidos y no una cantidad estipulada.

**Controversia por adjudicar en cuanto a intereses legales**



51. Sobre este asunto las partes acordaron las cantidades que suman los intereses de acuerdo con la posición de cada cual y conforme a derecho.

52. Por tanto, las partes entienden que lo que resta por resolver en cuanto a los intereses legales es una controversia de estricto derecho sobre si se acumulan intereses mientras el Peticionario ventiló su petición de quiebra, la cual fue desestimada.

53. Una vez el Tribunal adjudique la controversia de derecho que existe, lo que resta es adjudicar la cantidad que procede y ya computada por acuerdo conforme a la posición del Peticionario o la Peticionaria. El Tribunal debe disponer sobre el término de pago para satisfacer los intereses.

54. Ambas partes se reservan el derecho de apelar la decisión que tome el Tribunal al respecto.

### III- HONORARIOS DE ABOGADO SOBRE ACCIÓN DE DESACATO

55. Sobre este asunto las partes no llegaron a acuerdo de clase alguna, por lo que se procede a documentar la posición de ambas partes para que el Tribunal resuelva la controversia.

**Posición de la Peticionaria**

56. En marzo de 2016 la Peticionaria presentó una acción de desacato por deuda de pensión alimentaria.

57. La primera vista se celebró el 20 de octubre de 2016, ocasión en la cual la Peticionaria reclamó una deuda de sobre $30 mil y en la que el Peticionario abonó la cantidad de $3 mil.

58. Ante el hecho de que debía computarse una deuda de más de cinco años, el Tribunal señaló otra vista de desacato para el 25 de enero de 2017. En esta ocasión se continuó la discusión sobre la conciliación de la deuda y se señaló otra vista de desacato para el 29 de junio de 2017.

59. **Durante la vista del 29 de junio de 2017, en su turno de argumentación la Suscribiente (Abogada de la Peticionaria) argumentó cuánto era la deuda en detalle, la cual sumaba $25,917.23, y la entonces abogada del Peticionario en su turno de respuesta aceptó la cantidad.** Así surge de la grabación de la vista. Se estableció entonces por el Tribunal en **$25,917.23** la deuda sobre las partidas en las que no existía controversia. **No hubo estipulación de clase alguna y tampoco sucedió como lo frasea el Peticionario más adelante al exponer su posición sobre este asunto. Con solo escuchar la regrabación puede corroborarse cómo transcurrió la vista.**

60. No obstante, no se concluyó con el asunto del desacato. Por esto es que no existe en el expediente orden, resolución ni sentencia resolviendo el asunto del desacato. Surge de la **MINUTA** de la vista del 29 de junio de 2017 que existía controversia en cuanto a las partidas relacionadas con los gastos educativos adicionales. De manera específica, la **MUNUTA** de referencia lee:

> Está en controversia el inciso de los gastos escolares y se ha determinado que culminó el descubrimiento de prueba. Para dicho asunto es necesario señalar una vista evidenciaria.
> Luego de coordinar con las agendas de las abogadas se señala <u>vista evidenciaria 25 de septiembre de 2017 a las 8:30 de la mañana</u>. Ese día cubrirá los gastos educativos y la ejecución de sentencia.

61. No obstante, surge de **ORDEN** de 20 de octubre de 2017 que la vista pautada para el 25 de septiembre de 2017 fue reseñalada por el paso del Huracán María por la Isla para el 15 de febrero de 2018. No obstante, surge también de **ORDEN** de 16 de marzo de 2018 que la vista pautada para el 15 de febrero de 2018 fue transferida para el 26 de marzo de 2018.

62. Las transferencias de vistas coincidieron con el retiro de la Juez que llevaba el caso desde el año 2011, la Honorable Carmen Rivera Marrero.

63. Finalmente, y ante una nueva Juez, el 26 de marzo de 2018 se retomó el asunto del desacato en vista celebrada ese mismo día de acuerdo con **ORDEN** emitida el 16 de marzo de 2018.

64. Surge de la **MINUTA** de 26 de marzo de 2018, transcrita el 2 de abril de 2018, lo siguiente: "Se señaló vista evidenciaria para el 21 mayo a las 8:30 de la mañana sobre los gastos escolares y reembolsos. Se señaló continuación de vista para el 15 de junio de 2018 a las 8:30 de la mañana".

65. Surge, además, de la **MINUTA** de la vista de 26 de marzo de 2018 que la Peticionaria, por conducto de su representación legal, explicó que con relación a la deuda de $25,917.23 se habían celebrado cuatro vistas de desacato y al 26 de marzo de 2018 no se habían fijado honorarios. La Peticionaria detalló las fechas de las audiencias celebradas para atender el asunto del desacato y así surge de la propia **MINUTA** de 26 de marzo de 2018, a saber: 20 de octubre de 2016, 25 de enero de 2017, 29 de junio de 2017 y la de ese día (26 de marzo de 2018). La Peticionaria solicitó entonces que se fijaran honorarios por las vistas mencionadas y que quedaran pendientes los honorarios de la vista evidenciaria que faltaba por celebrarse.

66. Con relación a esta solicitud de la Peticionaria, el Tribunal dispuso, y así surge de la **MINUTA** de la vista del 26 de marzo de 2018, lo siguiente: **"Los honorarios se adjudicarán en la próxima vista"** (en referencia a la vista evidenciaria pautada para el 21 de mayo de 2018).

67. Cabe destacar que a la vista de 26 de marzo de 2018 el Peticionario llegó con una radicación de un procedimiento de quiebra que había realizado el 24 de marzo de 2018 para informarlo al Tribunal, el cual fue desestimado mediante orden de la Corte de Quiebras de 20 de mayo de 2019 y que obra en el expediente del Tribunal.

68. No obstante, la vista evidenciaria de 21 de mayo de 2018 tampoco se llevó a cabo debido a que se dejó sin efecto el señalamiento mediante **ORDEN** de 14 de mayo de 2018. Acto seguido, mediante **ORDEN** de 18 de mayo de 2018 el juez administrador regional de Bayamón José Anglada Raffucci ordenó el traslado inmediato del caso al Tribunal Superior de Arecibo por ser el lugar de residencia de la madre custodia y la menor.

69. La próxima vista de este caso fue celebrada el 5 de diciembre de 2018 ante esta Sala de Arecibo (vista de estatus), ocasión en la cual la Peticionaria planteó el hecho de que no se habían adjudicado honorarios por el asunto del desacato.

70. Lo primero que debe destacarse es que la menor en este caso no tiene culpa del trámite judicial tan prolongado que ha tomado este caso.

71. En segunda instancia, surge con meridiana claridad de **MINUTA** de la vista de 26 de marzo de 2018 que el Tribunal había dispuesto que **los honorarios por el desacato se iban a adjudicar en la vista evidenciaria que estaba supuesta a celebrarse el 21 de mayo de 2018** para finalizar el asunto del desacato al adjudicar el asunto en controversia en cuanto a los gastos educativos adicionales. No obstante, esa vista no llegó a celebrarse y el caso fue trasladado de Bayamón a Arecibo. La vista evidenciaria no se ha señalado.

72. En este caso, y en cuanto a la acción de desacato, ya se estableció la deuda sobre las partidas que no se encontraban en controversia ($25,917.23) y se había señalado una vista evidenciara para culminar los procedimientos relacionados con el desacato al adjudicar sobre la partida que se encontraba en controversia (gastos educativos adicionales o mayores). No obstante, a pesar de que la vista evidenciaria estaba pautada para el 25 de septiembre de 2017 no pudo celebrarse por distintos motivos.

73. Lo cierto es que el procedimiento de desacato no ha finalizado y el Tribunal dispuso en **MINUTA** de 26 de marzo de 2018 que iba a disponer de los honorarios de abogado que giran en torno al procedimiento de desacato al final de los procedimientos.

74. Una vez culmine la vista evidenciaria sobre los gastos educativos que se encuentran en controversia, el Tribunal debe realizar la determinación de desacato y adjudicar

honorarios por todos los procedimientos relacionados en beneficio de la alimentista.

75. A juicio de la Peticionaria, resulta medular que este Honorable Tribunal estudie detalladamente el tracto de este caso en cuanto al desacato. Esto, ya que el Peticionario toma ventaja del trámite tan accidentado del caso (cambio de juez tres veces y traslado del caso) para inducir a error al Tribunal, lo cual resulta temerario. Falta por adjudicar la cuestión del desacato. Por ello no hay una determinación de desacato. Sencillamente, resulta imposible que un padre que tiene una deuda de pensión que sobrepasa los $25 mil (ya adjudicados) no se encuentre en desacato.

### Posición del Peticionario en cuanto a honorarios de abogado

76. El Peticionario plantea que en ninguna de las vistas a las que hace referencia la Peticionaria el Tribunal lo encontró incurso en desacato. Ciertamente, se estableció una cantidad como deuda de pensión alimentaria. No obstante, dicha cantidad fue computada por las abogadas junto a la Honorable Carmen Rivera Marrero. La licenciada Juarbe, entonces representante legal del peticionario, estuvo de acuerdo con la cantidad que surgió del ejercicio que se llevó a cabo en corte abierta. En ningún momento se desfiló prueba sobre el alegado incumplimiento y la cantidad que se adeudaba. Por no haberse encontrado incurso en desacato al peticionario, entendemos no procede la imposición de honorarios de abogado.

77. Se niega la alegación de la peticionaria en cuanto a que el peticionario intenta inducir a error a este Tribunal. En ningún momento se han hecho aseveraciones falsas ni cosa que se le parezca. En cuanto a la vista celebrada el 29 de junio de 2017, este Tribunal puede corroborar lo que allí aconteció escuchando la regrabación de dicha vista. La abogada de la peticionaria indicó la cantidad que, a su juicio, ascendía la deuda. Por cuanto la licenciada Juarbe, entonces abogada del peticionario, no tenía los mismos número, se calculó la deuda junto a la juez. Al escuchar la regrabación este Tribunal podrá percatarse que la Juez estaba haciendo sus cálculos junto a las abogadas. Como parte del ejercicio, se le abonó a la deuda de pensión alimentaria los pagos efectuados por el peticionario para la matrícula de la escuela de la menor, aunque estos eran adicionales a la pensión regular. Finalmente, la licenciada Juarbe aceptó la cantidad resultante.

**POR TODO LO CUAL**, muy respetuosamente, se solicita de este Honorable Tribunal que tome conocimiento de lo antes expresado y disponga sobre los asuntos pendientes sobre la pensión alimentaria según dispuesto en la presente Moción.

RESPETUOSAMENTE SOMETIDO,

En Arecibo, Puerto Rico, a 9 de diciembre de 2019.

BARCELÓ & ACEVEDO LAW OFFICES
PO Box 367546
San Juan, PR 00936
Tel. (787) 758-7626
Fax: (787) 758-7627
E: v.acevedo.ayala@gmail.com

_____
**LCDA. VERÓNICA ACEVEDO AYALA**
RUA Núm.: 18,116

Lcda. Myrna I. Vázquez González
RUA TS NÚMERO 20581
PO BOX 151 Hatillo, PR 00659
Teléfono: (713) 205-3114
licenciadavazquez@yahoo.com